NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-878                                      Appeals Court


COMMONWEALTH  vs.  JOSHUA W. ROE.


No. 15-P-878.

Plymouth.     October 13, 2016. - December 28, 2016.

Present:  Cypher, Cohen, & Green, JJ.


Indecent Assault and Battery.  Evidence, Prior misconduct,
     Relevancy and materiality, Grand jury proceedings.  Grand
     Jury.  Practice, Criminal, Instructions to jury, Grand jury
     proceedings.



     Indictment found and returned in the Superior Court
Department on July 20, 2012.

     The case was tried before Charles J. Hely, J.


     Thomas Dougherty for the defendant.
     Keith Garland, Assistant District Attorney, for the
Commonwealth.


     CYPHER, J.  The defendant, Joshua W. Roe, appeals from his

conviction by a Superior Court jury on January 8, 2015, of

indecent assault and battery on a child under fourteen in

violation of G. L. c. 265, § 13B.  The defendant raises four

arguments in this appeal:  (1) that the inadvertent disclosure

of the defendant's alleged prior sexual assault unduly prejudiced the defendant; (2) that the judge abused his discretion by allowing the victim's father to testify about the defendant's possible sexual interests; (3) that the judge erred in denying the defendant's motion to dismiss the grand jury's indictment; and (4) that the judge erred by denying the defendant's motion in limine regarding the delayed disclosure of unexpected testimony by the victim. Due to multiple errors, as discussed infra, including the admission in evidence of an inadmissible prior bad act, the conviction must be reversed.

1. Background. We summarize the facts that the jury could have found, reserving some details for later discussion of the issues raised by the defendant. The defendant was an assistant Boy Scout leader for a troop in Wareham. The victim, a thirteen year old boy, was a member of the defendant's troop. The defendant would sometimes bring the victim to and from scout meetings to help the victim's family, whom he grew to know through a working relationship with the victim's father. In November, 2011, while driving the victim home, the defendant stated that he could stop the vehicle and have his way with the victim. The victim asked whether the defendant was homosexual, and the defendant replied that he was bisexual. In December of that year, the defendant stated to the victim, "you know I could turn you on." Later, in March, 2012, the defendant, his mother,

and the victim were returning from a scout meeting. While the defendant's mother was inside a package store, the defendant and the victim were jokingly tussling back and forth. The defendant reached into the back seat, where the victim was sitting, and touched the victim's genitals. The victim testified that the defendant touched him for "long enough to seem like it wasn't an accident" and that it made him feel "really uncomfortable."

In April, 2012, the victim's father and the defendant had a telephone conversation.[1] When the father asked the defendant whether he liked boys, he told the father that he did not "really know" whether he had sexual thoughts about "little boys" and that he had not touched the victim, but had spoken to him several times in an inappropriate fashion. Following the conversation with the defendant, the father asked his son if anything inappropriate had happened with the defendant. The victim told his father about the touching that occurred the previous month.

---

[1] During direct examination, the defendant testified that he called the father to ask what type of dog food he should feed the father's dogs. At sidebar, the Commonwealth alleged that the defendant initiated the telephone conversation with the father to discuss sexual assault allegations that were brought against him by another boy, and therefore, the Commonwealth should be permitted to place the conversation and resulting actions in context. The judge allowed the Commonwealth to refer to some other "misconduct" during cross-examination to give context to the telephone conversation.

2.  Discussion.  We first discuss the issues that warrant reversal followed by the remaining issue that may appear at retrial.[2]

a.  Precluded testimony.  The defendant argues that the judge allowed the victim's father to testify about a prior sexual assault charge against the defendant.  The defendant appears to misapprehend the record, however, as the judge did not allow the testimony.  The judge had granted the defendant's motion in limine and prohibited any mention of alleged inappropriate touching of a different boy, after concluding that the probative value was outweighed by the unfair prejudicial effect of such evidence.  Nevertheless, the precluded testimony was disclosed to the jury during the father's direct examination.  A curative instruction was not given until the following day, after jury deliberations had begun, when the jurors asked the judge if there were any statements from the father's testimony that they should disregard.

In determining the appropriate standard of review, we consider the alleged errors and the steps the defendant took to preserve them.  First, he filed a motion in limine to exclude the bad act testimony, which was granted.  Although the judge

---

[2] We conclude that the alleged delayed disclosure of new testimony by the victim was not error but that the issue does not warrant discussion because it will not recur at any potential retrial.

precluded any reference to other bad acts, the father testified to them. The defendant objected to the father's testimony and the judge sustained the objection, but he did not permit defense counsel to approach the bench. On the other hand, the defense attorney did not ask for a curative instruction, move for a mistrial, or move to strike the inadvertent testimony. In these circumstances, where the defendant moved in limine to exclude the testimony, objected to the testimony at trial, and was not permitted to approach the sidebar to seek a further remedy, we conclude that the defense attorney did enough to preserve the issue.[3] Compare Commonwealth v. Reeder, 73 Mass. App. Ct. 750, 752-754 (2009) (court reviewed for prejudicial error where defendant moved before trial to exclude references to his alias, but did not object to references during testimony at trial), but see Commonwealth v. Murphy, 426 Mass. 395, 403 (1998) (court reviewed for substantial risk of miscarriage of justice because defendant did not ask for mistrial after his initial request for sidebar conference following witness's erroneous testimony had been denied). Thus, we review to determine whether the defendant was unfairly prejudiced by the father's testimony.

---

[3] We note that the rule of preservation has been changed for cases tried since the issuance of Commonwealth v. Grady, 474 Mass. 715, 719 (2016) ("Going forward, . . . [w]e will no longer require a defendant to object to the admission of evidence at trial where he or she has already sought to preclude the very same evidence at the motion in limine stage . . ."). See Commonwealth v. Almele, 474 Mass. 1017, 1019 (2016).

"It is well settled that the prosecution may not introduce evidence that a defendant has previously misbehaved . . . for the purpose of showing his bad character or propensity to commit the crime charged." Commonwealth v. Vera, 88 Mass. App. Ct. 313, 319 (2015), quoting from Commonwealth v. Copney, 468 Mass. 405, 412 (2014). "However, '[s]uch conduct . . . may be admissible for other purposes, such as to show a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive.'" Ibid., quoting from Commonwealth v. Helfant, 398 Mass. 214, 224 (1986). See Mass. G. Evid. § 404(b)(2) (2016). Where evidence is relevant for one of those purposes, it should be excluded if its "probative value is outweighed by the risk of unfair prejudice to the defendant, even if not substantially outweighed by that risk." Vera, supra, quoting from Commonwealth v. Crayton, 470 Mass. 228, 249 n.7 (2014).

In the event such evidence is objected to and erroneously admitted, the judge ordinarily may rely on curative instructions "as an adequate means to correct any error and to remedy any prejudice to the defendant." Commonwealth v. Costa, 69 Mass. App. Ct. 823, 827 (2007) (quotation omitted). Curative instructions are considered to be more effective immediately after the prohibited comment is uttered, see Commonwealth v. Rodriquez, 49 Mass. App. Ct. 370, 374 (2000), and "[j]urors are

expected to follow instructions to disregard matters withdrawn from their consideration." Commonwealth v. Cameron, 385 Mass. 660, 668 (1982). Generally, provided the instructions are reasonably prompt and the jury do not hear the inadmissible evidence again, the error will be considered cured. See Commonwealth v. Kilburn, 426 Mass. 31, 38 (1997). See also Commonwealth v. Gallagher, 408 Mass. 510, 517-518 (1990); Commonwealth v. Mendes, 441 Mass. 459, 470 (2004).

Here, during the father's direct examination, he testified that the defendant had told him on the telephone that he had not touched the victim the way he had touched another boy. Prior to the father's testimony, the judge ruled that there would be no mention of any other inappropriate touching because of its prejudicial effect. Weighing the factors established in Commonwealth v. King, 387 Mass. 464, 471-472 (1982), the judge determined that the touching of the other boy was insufficiently related to the touching of the victim because it was not committed in a similar manner, there was not a close relationship between the victims, and the two acts were not committed close in time. The judge stopped the father's testimony immediately after he mentioned the prior bad act and sustained the defendant's objection, but denied his request to approach the bench. The judge did not strike the testimony or instruct the jury to disregard the bad act evidence, but said,

"We're not getting into any comments about any other . . . event or any other person, if there was such a thing.  We're restricting ourselves."

The following day during the defendant's cross-examination, the judge modified his initial ruling and allowed the Commonwealth to refer to "some misconduct" to give context to the telephone conversation between the father and defendant. The defendant once again objected to the mentioning of prior misconduct.

The failure to strike the reference to the prior touching along with the lack of a prompt curative instruction prejudiced the defendant.  The Commonwealth relies on Commonwealth v. Baptista, 86 Mass. App. Ct. 28, 32 (2014), to argue otherwise; however, the circumstances in that case differ from this case. In Baptista, the denial of a request for mistrial was affirmed because the judge immediately gave a prompt, forceful, curative instruction to combat precluded bad act testimony.  See ibid. Additionally, the erroneous reference in Baptista was vague and fleeting, and it did not apprise the jury of the defendant's prior bad act.  See ibid.

Here, although the jury were eventually instructed on how they could consider the father's testimony, the instruction did not come until the following day after they had begun deliberations.  The remark made by the judge immediately

following the erroneous testimony ("We're restricting ourselves") was not directed to the jury and does not rise to the level of a curative instruction. The day after the father's testimony, the judge advised defense counsel that he would instruct the jury upon defense counsel's request, but defense counsel did not request a curative instruction. The prejudicial testimony should have been struck and the curative instruction should have been given as soon as the father mentioned the defendant's prior bad act and the defendant objected. See Rodriquez, 49 Mass. App. Ct. at 374; Costa, 69 Mass. App. Ct. at 827. See also Commonwealth v. Hoffer, 375 Mass. 369, 372 (1978); Commonwealth v. Chubbuck, 384 Mass. 746, 753-754 (1981). Defense counsel asked to approach the bench immediately after the inflammatory statement, but was not permitted to do so.

Furthermore, as demonstrated by the jury's question to the judge about the father's testimony, the testimony was not vague and it did alert the jury to the defendant's prior bad act. Evidence of similar acts of misconduct by a defendant carries with it the danger of misuse by the jury. See Commonwealth v. Errington, 390 Mass. 875, 881 (1984). The danger in the present instance was not reduced by any simultaneous instruction. Therefore, we conclude that the jury's exposure to the precluded testimony that (although the subject of an objection that was sustained) was not struck, together with the absence of an

immediate and forceful curative instruction, unfairly prejudiced the defendant.

b. _Character evidence_. The defendant argues that the father's first complaint testimony included impermissible character evidence of the defendant's possible sexual interests, specifically his sexual attraction to little boys. Prior to trial, the defendant filed a motion in limine addressing this statement, which was denied. Because the defendant preserved the issue on appeal with a timely objection, we review for prejudicial error. See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

"As a general rule, evidence of a person's character is not admissible to prove that he acted in conformity with that character on a particular occasion." Commonwealth v. Bonds, 445 Mass. 821, 829 (2006), quoting from Liacos, Brodin, & Avery, Massachusetts Evidence § 4.4.1, at 130 (7th ed. 1999). However, otherwise inadmissible character evidence may be admitted for a proper purpose, such as proving motive or intent. See Helfant, 398 Mass. at 224. See also Commonwealth v. Simpson, 434 Mass. 570, 579 (2001) (defendant's statement showing state of mind admissible notwithstanding that "in other circumstances [it] could tend to prove guilt by evidence of bad character"). See generally Mass. G. Evid. § 404. Whether evidence is relevant is "entrusted to the trial judge's broad discretion." Simpson,

supra.  However, relevant evidence may be excluded if its probative value is substantially outweighed by its unfair prejudicial effect.  See Commonwealth v. Stroyny, 435 Mass. 635, 641 (2002); Bonds, supra at 831; Commonwealth v. Gomes, 475 Mass. 775, 784 (2016).  See also Mass. G. Evid. § 403 (2016).  A judge's assessment that the probative value of proffered evidence is outweighed by some countervailing prejudicial effect is reviewed for an abuse of discretion.  See Commonwealth v. Otsuki, 411 Mass. 218, 235-236 (1991); Commonwealth v. Rosario, 444 Mass. 550, 557 (2005).  "We defer to the judge's exercise of discretion unless the judge has made 'a clear error of judgment in weighing' the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives."  Commonwealth v. Alleyne, 474 Mass. 771, 779, quoting from L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (2016) (citation omitted).  The effectiveness of limiting instructions in minimizing the risk of unfair prejudice should be considered in balancing prejudice and probative value.  See Commonwealth v. Dunn, 407 Mass. 798, 807 (1990); Mass. G. Evid. § 403.

Here, testimony by the father that the defendant said that he did not "really know" if he had a problem with or ever had thoughts of doing sexual things with little boys is relevant to the crime charged.  In Commonwealth v. Bradshaw, 86 Mass. App.

Ct. 74 (2014), the court affirmed a lower court's decision to allow in evidence the defendant's statement that he was attracted to young boys. In Bradshaw, the judge admitted the statement for a limited purpose. See id. at 77-78. Before the testimony was given, the judge correctly instructed the jury, "You may consider [the defendant's statement] solely on the limited issue of whether or not the defendant had a motive to commit the crime that was charged in this indictment, and as to his state of mind and intent." Id. at 78. As in Bradshaw, the statements made to the father in this case were relevant with respect to the limited issues of motive, state of mind, and intent because they explain why the defendant would touch the victim and what he might have been thinking the night the assault occurred. However, here, although there may have been a proper limited purpose for the testimony, the failure to guide the jury on their use of this evidence was prejudicial error. The judge did not give a contemporaneous limiting instruction when the father testified, nor was an instruction given when the Commonwealth cross-examined the defendant as to the same conversation.

Furthermore, there was no limiting instruction in the final jury charge. See Commonwealth v. McCowen, 458 Mass. 461, 478-479 (2010) (no abuse of discretion in admitting bad act evidence subject to limiting instruction given immediately after evidence

was admitted, as well as instruction in final charge).  See also Gomes, 475 Mass. at 785 (question whether evidence was more prejudicial than probative was close, but there was no error in light of judge's limiting instruction, that jury were not to consider evidence for purpose of bad character, given when evidence was admitted and repeated in his final jury charge).  Although there is no requirement that the judge give limiting instructions sua sponte, see Commonwealth v. Sullivan, 436 Mass. 799, 809 (2002), "[p]rompt cautionary instructions to the jury are critical to protecting a defendant against prejudice where [character] evidence is admitted."  Brodin and Avery, Massachusetts Evidence § 4.4.6, at 155 (8th ed. 2007).  The jury received no guidance regarding how they should consider the potentially prejudicial testimony.  See generally Commonwealth v. Anestal, 463 Mass. 655, 673 (2012).

Finally, we cannot discern from the record the extent to which the judge considered whether the evidence would unduly prejudice the defendant.  Without a limiting instruction, and in light of the admission of the precluded testimony, we conclude that the character evidence was prejudicial.

c.  Grand jury indictment.  The defendant argues that the judge erred in denying the defendant's motion to dismiss the grand jury's indictment.  He contends there was insufficient evidence to establish probable cause to indict the defendant and

the integrity of the grand jury proceeding was impaired by the Commonwealth's failure to disclose exculpatory evidence and references connecting the defendant's Boy Scout troop to the Catholic Church.

i.  Insufficient evidence.  In general, a "court will not inquire into the competency or sufficiency of the evidence before the grand jury."  Commonwealth v. McCarthy, 385 Mass. 160, 161-162, (1982), quoting from Commonwealth v. Robinson, 373 Mass. 591, 592 (1977).  A court may, however, consider whether the grand jury received sufficient evidence to establish probable cause to arrest.  See McCarthy, supra at 163.  To survive a motion to dismiss, the grand jury must simply be presented with evidence supporting a finding of probable cause as to each of the elements of the charged crime.  See Commonwealth v. Walczak, 463 Mass. 808, 817 (2012).

The grand jury indicted the defendant on a charge of indecent assault and battery on a child less than fourteen years of age.  To survive a motion to dismiss, the Commonwealth was required to present the grand jury with evidence showing probable cause for each of the three elements of the offense, that (1) the alleged victim was not yet fourteen years of age at the time of the alleged offense; (2) the defendant committed an assault and battery on that child; and (3) the assault and battery was "indecent" as that word is commonly understood,

measured by common understanding and practices. G. L. c. 265, § 13B. Here, police Officer William Desilva testified at the grand jury hearing that the victim was born in July of 1998, which established that the victim was under fourteen years old at the time of the crime. Desilva also testified to the inappropriate remarks the defendant made to the victim and that the defendant grabbed the victim's thigh and started moving his hands towards the victim's groin area.[4] The trial judge did not err in concluding that the Commonwealth presented enough evidence to show probable cause that the defendant committed the charged crime.

ii. Integrity of the proceeding. A court may also consider whether the integrity of the grand jury proceeding was impaired. See Commonwealth v. O'Dell, 392 Mass. 445, 446-447 (1984). "A motion to dismiss on this ground may be allowed only on a showing that (1) false or deceptive evidence was offered knowingly or with 'reckless disregard of the truth' of that evidence; (2) the false evidence 'probably influenced' the grand jury's decision to indict; and (3) the evidence was presented

_____

[4] The victim initially told his father and the police that the defendant grabbed his inner thigh, but later told the prosecutor that the defendant touched his penis. Evidence that the defendant grabbed his inner thigh was sufficient for the grand jury to find probable cause that the defendant committed the indecent assault. See Commonwealth v. Rosa, 62 Mass. App. Ct. 622, 628 (2004). However, the defendant was convicted beyond a reasonable doubt on the evidence that he touched the victim's penis.

with the intention of obtaining an indictment."  Commonwealth v. Hunt, 84 Mass. App. Ct. 643, 651 (2013) (citations omitted).

The defendant has not directed us to any evidence to support his position that the Commonwealth knowingly provided deceptive evidence with the intention of aligning the defendant with the clergy sex abuse scandal.  In addition, the defendant failed to support his argument that the Commonwealth knowingly failed to disclose potentially exculpatory evidence that the defendant and victim were jokingly tussling before the illegal touching took place.  There was no error.  However, for the reasons stated supra, we reverse the judgment and set aside the verdict.

So ordered.