NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-932

COMMONWEALTH

vs.

VINCENTE DEJESUS, JR.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendant was convicted of resisting arrest and found not guilty of disturbing the peace.  On appeal, the defendant argues that the trial judge abused her discretion by admitting evidence that the police arrested him on suspicion of brandishing a firearm, that the arresting officers were members of the gang unit, and that one of the officers was fearful during the arrest because he had a family; as well, the defendant argues the judge erroneously denied his motion for a mistrial.  We vacate the defendant's conviction.

_____

[1] We spell the defendant's name as it appears in the criminal complaint.  The defendant informs us that the correct spelling of his first name is Vicente.

1. <u>Gun evidence</u>.  Prior to trial, two counts of the criminal complaint, including a charge of assault with a dangerous weapon, were dismissed.  At the outset of the trial, the defendant moved in limine to preclude the police witnesses from testifying that the arrest he was accused of resisting was based on information that he had brandished a handgun during a road rage incident, the basis for the dismissed assault charge.  The Commonwealth argued that such evidence was necessary to explain why the police were arresting the defendant and the strong showing of force they used when they did.  The judge agreed with the Commonwealth and denied the motion, but she stated the evidence was limited "to putting the actions of the police in context."  Before opening statements, the judge instructed the prosecutor on the parameters of her ruling:

> "I'm allowing you to put into context the reason that so many police officers arrived, or they arrived in the manner in which they did; that information had come to them that someone had pointed a gun or whatever it is that was given to them.
>
> "But you're going to -- Commonwealth, you're going to need to make clear as you put it in context that there was no gun found.  There was no gun charge."[2]

---

[2] After the defendant's arrest, the police obtained a search warrant for a different car, which belonged to the defendant, and found a BB gun.  The defendant was never charged with unlawful possession of any firearm, and as the charge of assault with a dangerous weapon had been dismissed, the judge ruled clearly and unequivocally that the later discovery of a BB gun would not be admitted.

2

In the first sentence of her opening, the prosecutor stated that the police "received information that a civilian had pointed a firearm, a gun, in the face of two other individuals." Defense counsel immediately objected that saying "in the face" was a prejudicial characterization of the anticipated evidence. The judge sustained the objection, told the jury to disregard the statement, and ordered the prosecutor to start again. The prosecutor reopened, stating that the police heard information that someone "had brandished a firearm at two individuals."

The defendant preemptively objected before the first witness, Officer Jared Brady, broached the subject. The prosecutor was permitted to lead the witness, and Brady testified that prior to the defendant's arrest, Brady received information that "a firearm had been brandished" by a person in the target vehicle. He also testified that he shielded himself behind the door of his cruiser when he initiated the arrest "[b]ecause there was a threat of a firearm used" and, for the same reason, that he drew his own firearm when it appeared that the defendant was reaching for something. On cross-examination, defense counsel elicited testimony that no gun was found.

Officer Kevin DeCarvalho also testified, over objection, that he responded to a report that the police were looking for someone who had brandished a firearm. Captain Megan Pare then testified, without objection, that the police were investigating

3

a "road rage incident" in which someone had smashed another car's window with a handgun. When this evidence was admitted through the testimony of the three officers, the defendant did not request a limiting instruction, and the judge did not give one. The prosecutor's closing argument emphasized that the police's mindset and actions during the arrest were in response to the report that the suspect had brandished a gun. No limiting instructions were requested, or given, during the final charge.

The defendant argues that the evidence suggesting he had brandished a gun against two individuals prior to the arrest was not relevant, and that any relevance was outweighed by the risk of unfair prejudice. We review a judge's decision to admit evidence, and the balancing of probative value versus unfair prejudice, for abuse of discretion. See Commonwealth v. Philbrook, 475 Mass. 20, 26 (2016); Commonwealth v. McGee, 467 Mass. 141, 156 (2014).

The judge did not abuse her discretion in determining that the evidence was relevant to provide context for the arrest. "[A]n arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct" (quotation omitted). Commonwealth v. Doyle, 83 Mass. App. Ct. 384, 389-390 (2013). The evidence was also relevant to

4

explain the degree of force used to arrest the defendant, particularly where a theme of the defense was that the police employed unreasonable force against him, warranting him to resort to self-defense during the arrest.

We conclude, however, that the judge abused her discretion in weighing the probative value of the evidence against the risk of unfair prejudice. "The introduction of evidence that a defendant possessed a weapon on a prior occasion creates a risk that the jury will use the evidence impermissibly to infer that the defendant has a bad character or a propensity to commit the crime charged." McGee, 467 Mass. at 156. The risk that the jury will engage in propensity reasoning can be mitigated by delivering careful limiting instructions. See Commonwealth v. West, 487 Mass. 794, 807 (2021); Commonwealth v. Wardsworth, 482 Mass. 454, 471-472 (2019); Commonwealth v. Roe, 90 Mass. App. Ct. 801, 807-808 (2016). Accordingly, when considering whether unfair prejudice outweighs probative value, judges must consider the effectiveness of limiting instructions in minimizing the risk of unfair prejudice. See Commonwealth v. Samia, 492 Mass. 135, 148 n.8 (2023); Roe, supra at 807.

As a general rule, a judge is not required to give limiting instructions if a defendant does not request them. See Commonwealth v. Teixeira, 486 Mass. 617, 629 n.7 (2021); Commonwealth v. Leonardi, 413 Mass. 757, 764 (1992). Here,

5

however, the judge recognized the potential volatility of the gun evidence and specifically conditioned its admission on the context it provided for the magnitude and manner of the police response.  Despite opportunities to do so -- contemporaneous with the three officers' testimony regarding the firearm, and in her final instructions to the jury -- the judge did not explain to the jury the limited purpose of the evidence.  Without such guidance from the judge, the jury could consider that the defendant had reportedly threatened people with a firearm as evidence of his criminal propensity or guilt.  See Roe, 90 Mass. App. Ct. at 808 ("Although there is no requirement that the judge give limiting instructions sua sponte," reversible error to admit propensity evidence where "jury received no guidance regarding how they should consider the potentially prejudicial testimony").  Contrast Commonwealth v. Grant, 71 Mass. App. Ct. 205, 210-211 (2008) (in resisting arrest case, permissible for police to explain they were executing arrest warrant for defendant, where judge "handled this difficult matter properly" by repeating forceful, targeted limiting instructions).  The judge's decision to admit this evidence with no limitation on its use was a clear error of judgment falling outside the range of reasonable alternatives.  See Roe, supra at 807.

Because the defendant sought to exclude the evidence in his motion in limine, the issue is preserved for appellate review.

6

See Commonwealth v. Grady, 474 Mass. 715, 718-719 (2016). Accordingly, we must determine whether the error was prejudicial. "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,' then it is prejudicial." Commonwealth v. Cruz, 445 Mass. 589, 591 (2005), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994). We address the question of prejudice infra.

2. Gang evidence. The defendant also moved in limine to exclude evidence that Brady was part of his department's "gang unit." The judge denied the motion, reasoning that it was "part of [Brady's] job." At trial Brady testified repeatedly that he was a "gang detective" in the "gang unit" for two years of his service, including on the day of the defendant's arrest. In addition to Brady, DeCarvalho testified that he got involved in the arrest after receiving a radio transmission from the gang unit, and that the gang unit was present when he arrived on the scene. Pare testified on direct that she too was a member of the gang unit at the time of the arrest. In closing argument, the prosecutor encouraged the jury to recall that Brady was a

7

member of the gang unit and was trained in investigating firearms when evaluating Brady's conduct during the arrest.[3]

We agree with the defendant that the officers' membership in the gang unit had little probative value. We also agree that its relevance was substantially outweighed by its unfair prejudicial effect, suggesting that the defendant was a gang member and that the firearms incident that prompted his arrest was gang related. See Commonwealth v. Carter, 488 Mass. 191, 206-207 (2021), citing Commonwealth v. Lopes, 478 Mass. 593, 604 (2018) (caution urged in admitting gang-related evidence because of risk of suggesting that defendant may have propensity for criminality or violence). To the extent the evidence was relevant to show that the officers had training in firearms arrests, it could have been offered without reference to gangs. Accordingly, it was an abuse of discretion to admit this evidence.

3. Evidence designed to elicit sympathy. On redirect, apparently to explain DeCarvalho's lack of memory of certain details and his use of profanity during the arrest, the prosecutor questioned him extensively about his adrenaline, stress, and anxiety levels, and his fear during the arrest,

---

[3] As the judge had denied the motion in limine and permitted the evidence to be introduced, it was proper for the prosecutor to discuss it in her summation.

8

particularly as it involved the threat of a firearm.  At the end of this line of questioning, DeCarvalho testified that he was twenty-eight years old and had a family and two children.  The defendant did not then object but claims on appeal that this testimony was irrelevant and unfairly prejudicial, as it sought to invoke sympathy for DeCarvalho.  See Commonwealth v. Gordon, 422 Mass. 816, 831 (1996) ("We urge caution in admitting evidence in criminal cases that appears to be more related to evoking sympathy then to proving the elements of the alleged crime or crimes").  We agree that this evidence should not have been solicited or admitted.  As the defendant did not object, we review this error to determine whether it created a substantial risk of a miscarriage of justice.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

4.  Motion for mistrial and cumulative error.  As noted supra, the judge permitted the Commonwealth substantial leeway in introducing evidence that the arrest was prompted by a report that a firearm had been brandished, and, during closing argument, the prosecutor emphasized that the police were concerned that the defendant might have a gun.  When she argued that the police were conducting "a legitimate investigation into a violent offense involving a firearm" and that they "responded to that threat appropriately," defense counsel objected.  At sidebar, the judge reminded the prosecutor that she had been

instructed to make it clear that no gun was found. The prosecutor resumed her argument, "They responded to a firearm. They searched the vehicle. They found not a firearm in that car" (emphasis added). Defense counsel immediately objected but before he could state the basis for the objection the judge interrupted to admonish the prosecutor, "You know you weren't supposed to say not in that car . . . [y]ou were fine till you [threw] in, not in that car." The transcript makes it obvious that the judge understood the prosecutor's reference to not finding a gun in "that" car as suggesting to the jury a fact not in evidence -- that the police in fact found a gun albeit in a different car. Indeed, the prosecutor defended herself at sidebar by stating, "Judge, it's misleading to say there was no gun . . . [t]here was a gun found."

Referring to facts not in evidence during closing argument is improper. See Commonwealth v. Alvarez, 480 Mass. 299, 305 (2018); Commonwealth v. Holt, 77 Mass. App. Ct. 716, 721 (2010). Defense counsel moved for a mistrial, which the judge denied, and the prosecutor resumed by saying, "They searched the car and there was no gun found in the car."

The defendant argues that the judge abused her discretion by not declaring a mistrial. We do not reach this argument, however, because we conclude that the admission of gun evidence without limiting instructions, repeated references to the gang

10

unit, and testimony about DeCarvalho's family and children collectively amounted to reversible error requiring a new trial. See Commonwealth v. Kozec, 399 Mass. 514, 525-526 (1987); Commonwealth v. Mazzone, 55 Mass. App. Ct. 345, 353 (2002).

Standing alone, the chance that the jury was swayed by sympathy for DeCarvalho and his family may not have created a substantial risk of a miscarriage of justice. But the evidence of reports that the defendant had earlier brandished a firearm, multiple references to the gang unit, to which defendant's counsel objected, and the prosecutor's implication that a gun was found in a different car amounted to prejudicial error. The jury were left with the impression that the defendant was a gun-carrying gang member. We cannot say with fair assurance that the improper evidence suggesting the defendant's criminal

propensity did not influence the jury or had but very slight effect in finding him guilty of resisting arrest.[4]

Judgment vacated.

Verdict set aside.

By the Court (Massing, Henry & Brennan, JJ.[5]),

Joseph F. Stanton

Clerk

Entered:  November 8, 2023.

---

[4] We acknowledge that the defendant's acquittal on the charge of being a disorderly person is some indication that the jury was not swayed by the improper evidence.  However, the acquittal can also be explained by the fact that the disorderly person charge was almost completely ignored at trial, no evidence of the effect of the defendant's conduct on the public was presented, and neither attorney addressed the elements of disorderly conduct in their closings.

[5] The panelists are listed in order of seniority.